UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HOMANT,

        Plaintiff,                                Hon. Ellen S. Carmody

v.

                                                   Case No. 1:10-cv-918

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On February 1, 2011, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Robert J. Jonker referred this case to the undersigned. (Dkt. #17).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 58 years old at the time of the ALJ's decision. (Tr. 18, 126). He earned an Associates Degree and worked previously as a salesperson, marketer, and truck driver. (Tr. 25, 132, 163-69). Plaintiff applied for benefits on June 11, 2007, alleging that he had been disabled since December 15, 2006, due to a vision impairment. (Tr. 11, 131). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 65-104). On October 8, 2009, Plaintiff appeared before ALJ William Reamon with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 22-63). In a written decision dated February 5, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 11-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On April 21, 2006, Plaintiff was examined by Dr. David Vigor. (Tr. 232-36). Plaintiff reported that he was experiencing "post-traumatic stress disorder secondary to an automobile accident" he suffered in 1972. (Tr. 232). Plaintiff reported experiencing "a slightly (sic)

3

amount of depression" for which "medicine is helping a little bit." (Tr. 234). The results of a mental status examination were unremarkable. (Tr. 234). Plaintiff was diagnosed with: (1) cognitive disorder, not otherwise specified, secondary to a motor vehicle accident and closed head injury and (2) post-traumatic stress disorder secondary to the closed head injury and motor vehicle accident. (Tr. 235). Plaintiff's GAF score was listed as 54.[1] (Tr. 235).

On December 19, 2006, Plaintiff reported that his medications "have leveled things out"and that he feels "okay." (Tr. 249).

On March 20, 2007, Plaintiff was examined by Dr. Amit Tandon. (Tr. 211-14). Plaintiff reported that he was experiencing diplopia [2] which "continues to worsen to the point where he has difficulty driving, reading and doing his daily habits." (Tr. 213). The doctor noted, however, that during the examination Plaintiff provided "very inconsistent answers." (Tr. 213). The doctor observed that patients with this condition are "typically" treated with "prisms," but that Plaintiff has previously tried them without success. (Tr. 214). The doctor noted that the "other option would be strabismus surgery." (Tr. 214). On April 26, 2007, Plaintiff consulted with opthamologist, Dr. David Barrett, who agreed that surgery "may be beneficial." (Tr. 217).

On June 25, 2007, Plaintiff completed a report regarding his activities. (Tr. 138-45). Plaintiff reported that he helped his children with "their morning [and] evening routine (incl[uding] homework)." (Tr. 139). Plaintiff reported that he feeds, grooms, and walks his dog "several times

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[2] Diplopia refers to double vision. *See* The Free Dictionary, available at http://medical-dictionary.thefreedictionary.com/diplopia (last visited on September 26, 2011).

daily." (Tr. 139). Plaintiff reported that he prepares meals, cleans floors, washes laundry, shops, and performs "light repairs" and "yard work." (Tr. 140-41).

On July 11, 2007, Plaintiff's wife completed a report regarding Plaintiff's activities. (Tr. 150-57). She reported that Plaintiff prepares meals, takes their children to school, watches television, goes fishing, plays with their children, feeds and plays with his dog, washes laundry, and performs lawn work, shoveling, and other housecleaning. (Tr. 150-52). She also reported that Plaintiff reads and drives a car. (Tr. 153-54).

On August 15, 2007, Dr. Jung Kim completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 282-95). Determining that Plaintiff suffered from cognitive disorder and post-traumatic stress disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 283-91). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular listings. (Tr. 292). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and never experienced episodes of decompensation. (Tr. 292). Dr. Kim also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 296-99). Plaintiff's abilities were characterized as "moderately limited" in eight categories. (Tr. 296-97). With respect to the remaining 12 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 296-97).

5

Treatment notes dated November 28, 2007, indicate that Plaintiff was taking his medication as prescribed and that as a result he was "doing pretty good with depression; less depressed and less often." (Tr. 439). Treatment notes dated October 1, 2008, indicate that Plaintiff stopped taking his anti-depression medication "a couple months ago, or more," but continued to take his anti-anxiety medication. (Tr. 422). Plaintiff reported that "depression will always be there but some things have lightened up, so his depression isn't as hard to deal with." (Tr. 422).

On April 2, 2009, Plaintiff was examined by opthamologist Dr. David Wu. (Tr. 386-89). Plaintiff reported that he was experiencing "multiple images" and "poor depth perception." (Tr. 387). Plaintiff reported that "when he is sitting without any motion, he is able to see mostly one image with his right eye and ignore input from his left eye however, when he is moving around, he sees multiple images (more than two), and also notices jiggling of the left eye." (Tr. 387). The doctor reiterated that surgical correction of his strabismus was an option, but Plaintiff declined such. (Tr. 388). Dr. Wu also emphasized to Plaintiff the importance of having an annual examination by an opthamologist, but Plaintiff indicated that he did not want to schedule any follow-up appointment. (Tr. 388).

On July 27, 2009, Plaintiff completed a report regarding his activities. (Tr. 190-97). Plaintiff reported that he watches television, performs household chores, prepares meals, helps his kids with their homework, walks his dog several times daily, washes laundry, mows the lawn, and performs household repairs. (Tr. 190-92).

At the administrative hearing, Plaintiff testified that "being outside in bright light" caused him to experience "halos around the picture like ghosts," but being inside "with florescent lighting" did "not really" cause him any vision problem. (Tr. 26). Plaintiff testified that he is able

6

to drive a car, watch television, and use a computer. (Tr. 27-35). Plaintiff also testified that he engages in photography "without too much trouble." (Tr. 35). Plaintiff testified that he uses a digital SLR camera for his photography and has "about 10,000 pictures on a hard drive" which he views on his computer. (Tr. 35-36).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from: (1) diplopia; (2) post-traumatic stress disorder; and (3) cognitive disorder, not otherwise specified, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-15). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 15-18). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently; (2) he can stand and/or walk about 6 hours during an 8-hour workday, with normal breaks; (3) he can sit about 6 hours during an 8-hour workday, with normal breaks; (4) he cannot climb ladders, ropes, or scaffolds; (5) he must

---

including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

avoid uneven terrain; (6) he cannot perform jobs requiring depth perception; (7) he must avoid all exposure to hazards such as machinery and heights; (8) he cannot perform skilled or detailed work; (9) he is able to maintain attention/concentration for two hour periods accommodated by normal breaks and lunch; (10) he requires a structured setting; and (11) can only occasionally interact with supervisors and the general public. (Tr. 15). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 22,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 58-60). This represents a significant number of jobs. *See Born v. Sec'y of*

9

*Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

        a.        Plaintiff is not Entitled to a Remand

As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 469-79). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

The evidence in question consists of the following: (1) mental health treatment notes dated October 1, 2008; and (2) a May 11, 2006, Veterans Administration (VA) decision finding that Plaintiff was fifty percent (50%) disabled, as of May 31, 2005, due to post-traumatic stress disorder. The October 1, 2008 treatment notes Plaintiff submitted to the Appeals Council are simply copies of evidence that was properly presented to the ALJ. (Tr. 422-24). The Court, therefore, need not analyze whether Plaintiff is entitled to a remand for further consideration of this particular evidence. With respect to the May 11, 2006 VA decision, Plaintiff is not entitled to a remand for three reasons.

First, Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Second, the evidence in question was in existence long before the ALJ rendered his decision and, therefore, cannot qualify as "new" evidence for purposes of a sentence six remand. *See Templeton v. Commissioner of Social Security*, 215 Fed. Appx. 458, 463 (6th Cir., Feb. 8, 2007) ("evidence is new only if it was not in existence or was not available prior to the ALJ's decision").

Finally, it is not reasonable to conclude that consideration of this evidence would have resulted in a different outcome. As stated in this decision, the VA applied a more relaxed (and much easier to satisfy) standard to Plaintiff's VA disability claim than is applied in a Social Security disability claim. Also, Plaintiff's VA claim was approved based almost exclusively on Plaintiff's

subjective allegations, which are not supported by the record that was before the ALJ. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

          b.      The ALJ Properly Evaluated the VA's Disability Rating

On June 20, 2007, the Veterans Administration (VA) determined that Plaintiff was seventy percent (70%) disabled, thus entitling him to disability payments. (Tr. 199-202). Plaintiff asserts that the ALJ "ignored" this determination.

Contrary to Plaintiff's argument, the ALJ expressly acknowledged this determination, observing that "[a]lthough [Plaintiff] qualified for an overall or combined rating for 70 percent disability from the Veterans Administration, that is not binding on the Social Security Administration and we were not provided the decision rationale referred to in Exhibit 10E." (Tr. 16). As the ALJ correctly concluded, the determination by the Veterans Administration is not binding on the Social Security Administration. As the relevant regulation provides:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504; *see also*, *Hunt v. Astrue*, 242 Fed. Appx. 376, 377 (8th Cir., Sept. 20, 2007) (recognizing that disability determinations by the Veterans Administration are not binding on the Social Security Administration).

As the ALJ also observed, Plaintiff failed to submit the "decision rationale" regarding

12

the Veterans Administration's finding that he was seventy percent disabled. (Tr. 16). The June 20, 2007 letter from the VA informing Plaintiff that he was seventy percent disabled stated that "a copy of our rating decision that gives the evidence used and reasons for our decision" was also provided to Plaintiff. (Tr. 199). The administrative record, however, does not contain this information. Plaintiff argues that the VA's rating decision is included in Exhibit 10E of the Administrative Record. A review of this exhibit, however, reveals that it contains only the aforementioned letter to Plaintiff, but does not contain a copy of the rating decision or the rationale underlying such.

In sum, Plaintiff's argument that the ALJ "ignored" the VA's decision is without merit. The ALJ expressly acknowledged this determination, but found such to be inconsistent with the evidence before him. The ALJ was unable to further or more substantively discuss the VA's decision because Plaintiff failed to submit a copy of the VA's rating decision. Accordingly, Plaintiff's argument is rejected.

c. The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that "the ALJ failed to give proper weight to the VA treaters and VA Disability Decision dated May 11, 2006." Plaintiff asserts that such violates the treating physician rule.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

13

inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

While Plaintiff invokes the treating physician doctrine, he has failed to identify any

14

opinion to which the ALJ failed to properly defer. As indicated above, Plaintiff's failure to properly develop this argument constitutes a waiver thereof. Moreover, as the ALJ observed, none of Plaintiff's treating physicians expressed an opinion regarding Plaintiff's residual functional capacity. With respect to Plaintiff's argument that the ALJ failed to afford appropriate weight to the VA's May 11, 2006 disability decision, as discussed above that particular item of evidence was not submitted to the ALJ, but was instead only first presented to the Appeals Council. Accordingly, this argument is rejected.

        d.      The ALJ Properly Assessed and Evaluated Plaintiff's Photography Activities

As previously noted, Plaintiff testified at the administrative hearing that he participates in photography using a digital SLR camera. Plaintiff testified that he engaged in this activity "without too much trouble" and has "about 10,000 pictures on a hard drive" which he views on his computer. In his decision denying Plaintiff's claim for benefits, the ALJ briefly referenced this testimony, stating that "[n]otwithstanding his alleged visual problems, [Plaintiff] also admitted taking and reviewing many (thousands) of photographs." (Tr. 16).

Plaintiff takes issue with this observation, asserting that such is inaccurate. Specifically, Plaintiff asserts that he did not actually take the thousands of pictures to which he referred in his testimony. Plaintiff asserts that these photographs were taken by others and merely forwarded to him for viewing. Plaintiff further asserts that he "can only take photographs for five to ten minutes at a time before falling asleep." Finally, Plaintiff asserts that he can only take photographs "with an adaptive special viewing attachment/lens." Plaintiff's assertions are not consistent with his testimony at the administrative hearing and the Court discerns nothing in the

record to support Plaintiff's after-the-fact explanation of his testimony. On the other hand, the ALJ's brief comment regarding Plaintiff's photography activities is entirely consistent with Plaintiff's testimony and other evidence of record. This argument is, therefore, rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.


Date: September 30, 2011           /s/ Ellen S. Carmody
                                   ELLEN S. CARMODY
                                   United States Magistrate Judge